(167 App. Div. 336)

## COLE v. HARRISON. (No. 7225.)

(Supreme Court, Appellate Division, First Department. May 7, 1915.)

1. BILLS AND NOTES ⬩⟺525—ACTIONS BY INDORSEE—SUFFICIENCY OF EVIDENCE—GOOD FAITH.

In an action by an indorsee against the maker of a note, which had been signed in blank and filled in by the payee contrary to instructions, a verdict for defendant *held* to be against the weight of the evidence as to the good faith of plaintiff.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. ⬩⟺525.]

2. BILLS AND NOTES ⬩⟺525—HOLDER IN DUE COURSE—GOOD FAITH—SUSPICION.

Under Negotiable Instruments Law (Consol. Laws, c. 38) § 33, providing that an instrument signed in blank can be enforced by one who became a

party thereto prior to its completion only in case it is filled in strictly in accordance with the authority granted, but if, after completion, it is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and section 95, providing that, to constitute notice of a defect in a negotiable instrument, there must be actual knowledge of the infirmity or defect, or knowledge of such facts that the taking of the instrument amounted to bad faith, mere suspicious circumstances do not prove bad faith, even though such as to show negligence by the indorsee in taking the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. ☞525.]

Appeal from Trial Term, New York County.

Action by Edward F. Cole against Ida S. Harrison. Judgment for defendant, and plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

William F. Wund, of New York City, for appellant.
Burt D. Whedon, of New York City, for respondent.

DOWLING, J.  The action is brought upon a promissory note made by defendant to the order of Donald McLean, dated February 20, 1911, for the sum of $15,000, payable at the National Park Bank three months after date, with interest, and indorsed by Donald McLean, and by him transferred to plaintiff.  It appears that the defendant was a client of McLean, who had originally obtained from her certain promissory notes signed by her to pay a balance due on an investment in what is called the "Minwax" business, purchased by her from Clifford L. Miller & Co. in January, 1910.  These notes were discounted at the National Park Bank, and new notes were obtained from her from time to time by McLean; each set of notes being used ostensibly to take up prior obligations, the latter, however, never being returned to her.  Finally, in February, 1911, the defendant's son being very ill, she signed at McLean's request four more notes, as those then in the bank were due, and, though she at first refused, she finally signed these four notes in blank, on McLean's representation that he was to use them to pay the balance due on the Minwax transaction.  When delivered, the notes bore only the defendant's signature and the ordinary printed matter.  One of these notes was filled in by McLean with the date February 20, 1911, the amount $15,000, the payee himself, the place where payable the National Park Bank, the time of maturity three months, and the addition of the words "with interest," and as so filled in was thereafter indorsed by McLean to the plaintiff, and is the note sued upon.  The defendant never gave McLean authority to fill out the note in the form in which it was finally transferred, nor to transfer it to the plaintiff.

[1] The plaintiff testified that he had many times loaned money to McLean, who was also his attorney, and that McLean had told him he was in trouble with a woman client of his, whose money he had taken and invested in the Minwax Company, and who threatened, unless she was paid back her money, to begin disbarment proceedings

against him. Nothing was said between them about the note in suit. On March 2, 1911, plaintiff finally agreed to loan McLean $15,000 to enable him to pay off this client, who was pressing him for her money, and on March 4th plaintiff gave his check to McLean, to the latter's order, in the sum of $15,000, drawn on the Brooklyn Trust Company, which was duly deposited by McLean for collection and the proceeds received by him through the National Park Bank of New York. Plaintiff testifies that on March 2d he promised McLean, by telephone, that he would send him the amount of this loan on the 4th, and that he did send his check for $15,000 on the morning of March 4th, whereupon McLean sent him the note in suit, together with two insurance policies, in the sum of $10,000 and $5,000, respectively. He says that he had always received collateral security on the other loans he had made to McLean, and that he expected such security upon this loan of $15,000, although nothing was said about the need of security, and he had no knowledge of what the nature thereof would be until he received McLean's letter. Plaintiff says that the note and the two insurance policies were inclosed in the letter from McLean which is in evidence, marked March 2d; but the letter itself contains no reference of any kind to the inclosure of a note and refers only to "two policies." It is to be noted, also, that the letter is dated March 2d; whereas the loan was not made until March 4th, and plaintiff claims he received the letter after the loan was made on that date. No explanation is given as to why the letter contains no reference to the note. The assignment of the policies bore date of March 2d, the same as the letter. Plaintiff says that the omission of any reference to the $15,000 note did not strike him as strange. When the note became due, it was not presented for payment, and no instructions had been left by plaintiff with his representative in this country to present the same for payment, but simply direction as to what was to be done in regard to the deposit of the partial payment, which had been promised by McLean to be made when the note was due.

Plaintiff never sued McLean upon the note, and no demand was ever made upon defendant for payment until plaintiff's attorney wrote her on December 23, 1913, nearly three years after the maturity of the note. Plaintiff admits that he did not inquire of McLean who the maker of the note was when he received it, and, though the note was signed "I. S. Harrison," and he noticed when he received the note that the body of it was in McLean's handwriting, he asked no questions of any kind about the note. There was no evidence offered tending to contradict plaintiff's version of the transaction. Under these circumstances it would seem that, although the plaintiff was not entitled to the direction of a verdict in his favor, yet the finding of the jury against him was against the weight of the evidence.

[2] The Negotiable Instruments Law (section 33) provides as follows:

"In order, however, that any such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his

hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

What constitutes notice is defined by section 95 of the same law, as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

What constitutes good faith upon the part of a holder of negotiable paper has been defined by the Court of Appeals in the following language:

"He is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide, his title, according to settled doctrine, will prevail." Cheever v. Pittsburgh Ry. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646.

Had plaintiff simply produced his check to the order of McLean for the full amount of the note, in the absence of any proof of knowledge on his part of the circumstances under which the note was given, and its diversion by McLean, or knowledge by him of facts making his action amount to bad faith, he would have been entitled to recover. But there are circumstances attending the transaction which, as they depend for their effect and bearing thereupon solely on the plaintiff's testimony, left his credibility as to those matters a question for the determination of the jury. Among these circumstances were the fact that McLean, to plaintiff's knowledge, was financially embarrassed, and was threatened with disbarment proceedings by a client of his, whose money was claimed to have been misapplied; that this client was a woman; that the note tendered plaintiff was apparently signed in a woman's handwriting; that the body of the instrument was all filled in, to plaintiff's knowledge, in McLean's handwriting; that the letter claimed to have inclosed the note, and the policies contained no reference to the note; that plaintiff made no inquiry of any kind as to the transaction, or McLean's acquisition of the note; and that no demand was made upon defendant for payment of the note until a period of nearly three years had elapsed. And yet, while all these details combined were sufficient to raise an issue of fact as to plaintiff's good faith in the transaction, they were not enough to justify a verdict for the defendant, since something more than mere suspicion is required to prove bad faith on the part of the holder of a note.

The judgment and order appealed from will therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. Order filed. All concur.