## GERSETA CORPORATION v. WESSEX-CAMPBELL SILK CO.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

No. 10.

1. **Bills and notes ⬤═337—Holder not charged with "bad faith" unless taking is dishonest; "good faith" defined.**

A "good-faith" holder of negotiable instrument under Negotiable Instruments Law N. Y. §§ 91, 95, is one who takes without knowledge of such facts as render it dishonest to take the particular paper; knowledge, not surmise, suspicion, or fear, being necessary to impute "bad faith," although knowledge of less than whole truth may suffice to impute notice of defects.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bad Faith; Good Faith.]

2. **Bills and notes ⬤═538(4)—Where no evidence that plaintiff had knowledge of collateral agreement, instruction on that point held properly refused.**

In action upon trade acceptances, where there was no evidence that plaintiff claiming to be bona fide holder had any knowledge of collateral agreement between drawer and drawee as to set-off, a requested instruction that plaintiff must show that it had not only no actual knowledge, but that it had no knowledge of facts sufficient to put it on notice of the agreement, was properly refused.

3. **Appeal and error ⬤═1033(5)—Instruction as to inference of bad faith from circumstances held more favorable to defendant than it was entitled to.**

In an action by the holder of domestic bills of exchange, where the evidence failed to show that plaintiff had any notice of separate agreement as to set-offs between drawer and drawee, an instruction that the jury might infer knowledge from circumstances and believe that holder had knowledge, whether he admitted it or not, *held* more favorable to defendant than it was entitled to.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Wessex-Campbell Silk Company against the Gerseta Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

The Wessex-Campbell Company brought this action at law against Gerseta Corporation, and the parties will be hereafter referred to as they were in the lower court. The action is upon two "trade acceptances," i. e., domestic bills of exchange drawn by Raw Silk Trading Company to its own order and by it indorsed in blank. The bills were drawn upon defendant and by it accepted payable at a designated bank. The indorsers subsequent to the Raw Silk Company and all in blank are Wessex-Campbell Throwing Company (which is the same corporation as plaintiff, the name having been slightly changed), D. G. Dery, and Alfred Sohland.

After the usual allegations of acceptance, demand, and protest, plaintiff in respect of each bill pleaded that it was the lawful owner and holder of the same.

The answer inter alia denied the last referred to allegation and pleaded as an affirmative defense to both said bills of ex-

change that defendant had given the same "to said Raw Silk Trading Company on condition that they were to be set off against trade acceptances in the amount of $128,-830.89 to be given to defendant by said Raw Silk Trading Company, if said trade acceptances were not given as agreed or were not paid at maturity." Further, that the Raw Silk Company had actually given defendant its trade acceptances in an amount far exceeding the amount of the bills in suit, which acceptances of Raw Silk Company were still due and owing, although duly demanded by said Raw Silk Company, to the defendant. Thus the issues joined were these:

(1) Was the plaintiff the lawful holder and owner of the said bills within the meaning of the Negotiable Instruments Law of New York, § 91; and

(2) Had plaintiff any notice of defect in respect of said bills within the meaning of section 95 of said law; and

(3) Could defendant substantiate the affirmative defense above outlined?

Before the due dates of the bills, plaintiff received them from Raw Silk Company in part payment of a then due indebtedness. Plaintiff then, on the strength inter alia of its own indorsement and those of Dery and Sohland, negotiated the bills with Talcott, by whom they were presented and to whom payment was refused. Talcott then demanded payment from plaintiff, who complied with the demand and thus again became the holder of the bills. Upon this title suit was brought.

At trial, officials both of Raw Silk Company and defendant testified substantially to the arrangement pleaded in the affirmative defense and stated that the purpose for which as a favor defendant gave Raw Silk Company the acceptances was to enable the latter concern to get imported silks from banks holding the invoices therefor and then to sell the silk so obtained, obtain acceptances from the vendees thereof, and substitute such acceptances for those of defendant. In substance, the story was that the conduct of the official of Raw Silk Company in using these acceptances to pay in part its indebtedness to plaintiff was a diversion.

That official of plaintiff who received the bills testified that he knew nothing of any such arrangement as was pleaded and as now outlined.

Defendant also endeavored (mostly by cross-examination) to show that plaintiff was not the owner of the bills because another corporation inter alia controlled by the indorser D. G. Dery was such owner and

holder. The court charged the jury that if they believed plaintiff's denial of "any knowledge whatsoever of any private agreement between the (drawer and defendant) that would prevent the negotiation of (the bills) to" plaintiff, and if they also believed that plaintiff was the "holder of the acceptance at the time of suit," then the verdict should be in favor of the plaintiff.

Defendant requested a charge that not only must plaintiff show that "it had no actual knowledge, but that it had no knowledge of facts sufficient to put it on notice of the agreement." And this request was supplemented by a demand that the court charge that the jury might "from the surrounding circumstances and not from any direct proof infer that the plaintiff did not act in good faith." Upon which the court ruled: "You may infer knowledge; there are two ways of showing knowledge, one is by a man admitting that he had knowledge, and the other is that the circumstances under which he acts make the jury believe that he had knowledge whether he admits it or not; you may infer knowledge from the circumstances." To this defendant excepted. Plaintiff had verdict and judgment; defendant took this writ.

Mortimer Hays, Herman Shulman, and Jacob J. Podell, all of New York City, for plaintiff in error.

I. Gainsburg and Joseph P. Segal, both of New York City, for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). **[1-3]** Section 91 of the Negotiable Instruments Law (Consol. Laws N. Y. c. 38) declares that one is a holder of an instrument under certain enumerated conditions, of which one is "that he took it in good faith and for value." Section 95 of the same statute declares that to constitute notice of a defect in the title of the person negotiating a bill or note, "the person to whom it is negotiated must have had actual notice of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

This writ seems to us an attempt to find or make some conflict or discord between the quoted portions of the two sections of the statute. The proposition is, as applied to the case at bar, that even if the plaintiff had no actual knowledge of the alleged diversion of the instruments in suit, and even if it had no knowledge of any facts rendering it bad faith to take the instruments (section

95), and even if full value was paid for the bill or note, yet if under all the surrounding circumstances as elicited at the trial the jury did not think he acted in good faith (section 91), the verdict should be for the defendant. Such a rule leaves far too many actions on negotiable paper to the mere whims or personal dislikes of jurymen; generated by unnoticed, and certainly immaterial, circumstances of trial.

It is obvious that the word "faith" is used in the same sense in both sections of the statute, i. e., a "recognition of the obligations of morals and honor" (Cent. Dic.), and the opposing adjectives coupled with it do not require any explanation. Good faith is fidelity and honesty, and bad faith is the opposite; and the definition of one defines its antonym by the addition of a negative. The late William G. Choate, some time judge of the court below, sitting as referee in Ward v. City Trust Co., 117 App. Div. 130, 140, 102 N. Y. S. 50, pointed out that section 95 is merely the declared rule of many courts, including those of New York, made into a statute; and that rule is that the notice of a defect or want of power in the transferor (here Raw Silk Company) to make a valid transfer must be knowledge of such facts on the part of the transferee that his action in taking the instrument amounted to bad faith, i. e., to dishonesty and absence of fidelity to the obligations of morals and honor.

Again it has been pointed out that the kind of faith referred to in the statute is commercial faith. The effort is always to ascertain whether the person whose actions are inquired into exercised that degree of both intelligence and uprightness which is deemed necessary to uphold the commercial morals of the community without unduly impairing the intended easy negotiability of promissory paper. Thus Carlisle v. Norris, 215 N. Y. 400, 415, 109 N. E. 564, 569 (Ann. Cas. 1917A, 429), declares that transferees are "not bound to conjure up all such doubts and suspicions, if any, as might have been suggested to the mind of a very vigilant and mistrustful person. Even negligence would not defeat their right. They were simply bound to act honestly and in good faith, and in the absence of evidence which would justify a jury in convicting them of bad faith because not pursuing an inquiry into the origin" of the promissory paper, the recovery of its proceeds cannot be denied. Further the transferee holder "is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the

party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. * * * The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide, his title, according to settled doctrine, will prevail." Cole v. Harrison, 167 App. Div. 336, 153 N. Y. S. 200, quoting from Cheever v. Pittsburgh, etc., Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646. To the same effect, Interboro, etc., v. Doyle, 165 App. Div. 646, 151 N. Y. S. 325. The foregoing is no more than an elaboration of the rule of Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857, the leading case in the courts of the United States, of which the latest restatement is Meyer v. Guardian Co. (C. C. A.) 296 F. 789, 794.

The difference between "good faith" and "bad faith" has probably been treated by every court in the world, but the measure of bad faith has, we think, never been better stated than by Loring, J., in Paika v. Perry, 225 Mass. 563, 114 N. E. 830, where in commenting upon the sections of the Negotiable Instruments Act now at bar, the learned judge remarked that it was not necessary to show that the person under investigation knew the exact fraud that was practiced, "it being sufficient to show that he had notice that there was something wrong about his assignor's acquisition of title, although he did not have notice of the particular wrong that was committed."

We conclude that the statute means and says that under section 91, a holder must take in good faith, but if he does not take in bad faith, his good faith is sufficiently shown, and bad faith under section 95 means that he must have knowledge of facts which render it dishonest to take the particular piece of negotiable paper under discussion. Knowledge, not surmise, suspicion, or fear, is necessary; not knowledge of the exact truth, but knowledge of some truth that would prevent action by those commercially honest men for whom law is made; if we were all gentlemanly saints, law would be a simpler and quite different thing.

It follows that, regarded as a commentary on the applicable sections of the statute, the charge was without error.

Regarded, however, as something related to the evidence produced, we think defendant had far too much consideration. There

was, as above stated, direct evidence of the existence of an agreement to restrict the use of defendant's acceptances, but there was not an iota of evidence that plaintiff knew or ought to have known anything about that arrangement. There was no basis of fact for the instructions requested. Any verdict for defendant should have been set aside, as opposed to all the evidence.

We do not consider it necessary to treat of the assignments relating to admission or rejection of evidence; and the evidence against plaintiff's ownership of the bills was trivial—the jury disposed of that.

Judgment affirmed, with costs.