In re William Lawrence WARD, a/k/a William L. Ward, Debtor.

**METRO MACHINE CORPORATION, Complainant,**

v.

**BERKLEY SHIPBUILDING & DRYDOCK CORPORATION, a Virginia corporation and William L. Ward, individually and R. Wayne Nunnally and Shipyard Associates, Inc., a Virginia corporation and Gregory L. Simpson and Gary Cole and M.S. Maritime Explorer Foundation and First Virginia Bank of Tidewater and Outland, Gray, O'Keefe & Hubbard and Internal Revenue Service and Rebel Marine Services, Inc., a Virginia corporation, Respondents,**

**and**

**Hugh S. Meredith and the United States of America, Intervenors.**

Bankruptcy No. 81–01711–N.
Adv. No. 82–0285–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 16, 1983.

Ashton H. Pully, Jr., Virginia Beach, Va., for debtor.

John F. Newhard, Jr., David K. Sutelan, Norfolk, Va., for Metro Machine Corp.

James Winstead, Norfolk, Va., for Berkley Shipbuilding & Drydock Corp.

R. Wayne Nunnally, Portsmouth, Va., Joseph R. Mayes, Norfolk, Va., for Shipyard Associates, Inc.

Robert R. Carter, Chesapeake, Va., for Gregory L. Simpson.

Herbert V. Kelly, Jr., Newport News, Va., for Gary Cole.

W. Thomas Knowles, Portsmouth, Va., for M.S. Maritime Explorer Foundation.

M. Richard Epps, Virginia Beach, Va., for First Virginia Bank of Tidewater.

John J. O'Keefe, III, Chesapeake, Va., for Outland, Gray, O'Keefe and Hubbard.

Michael A. Rhine, Norfolk, Va., for I.R.S.

Paige E. Reffe, U.S. Dept. of Justice, Washington, D.C., for I.R.S. Tax Div.

Richard I. Gulick, Norfolk, Va., for Rebel Marine Services, Inc.

Robert L. O'Donnell, Norfolk, Va., for Hugh S. Meredith Virginia Nat. Bank.

Frank J. Santoro, Portsmouth, Va., Trustee in Bankruptcy.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

Ashton H. Pully, Jr. ("Pully"), a Virginia Beach attorney, sought a ruling of this Court permitting late filing of a proof of claim in the above-styled bankruptcy case. The basis of Pully's claim is an alleged statutory lien for attorney fees pursuant to

section 54–70 of the Code of Virginia[1]. At a hearing held April 12, 1983, the Court ruled that it could find no cause to permit late filing of the proof of claim absent a finding that Pully holds a valid lien under the provisions of the Virginia Code.

The debtor, William Lawrence Ward ("Ward"), held a note from the plaintiff, Metro Machine Corporation ("Metro"). Ward held the note as sole stockholder of Berkley Shipbuilding and Drydock Corporation, the named payee. The note had an original principal sum of $263,350.00. Ward apparently engaged Pully to collect the note from Metro on a contingent basis whereby Pully's fee would be paid from the proceeds of the note. Pully alleges that the terms of the contingent fee agreement were fifteen percent of the first $150,000.00 collected plus one-third of any additional amount recovered.

On November 16, 1981, eleven days after engaging Pully to collect the note, Ward filed a petition under Chapter 13 of the Bankruptcy Code. Ward filed his petition *pro se.* Later, Ward engaged Pully to represent him in the bankruptcy, and Pully entered the case on January 11, 1982. On the same date, Pully filed schedules and statements on behalf of the debtor without mention of the employment and fee arrangement involving the Metro note. On January 28, 1982, Pully filed amended schedules and statements disclosing his prior employment to collect the note and the existence of a contingent fee arrangement.

On February 22, 1982, Pully advised the Assistant United States Trustee that he was claiming an attorney's fee which would attach to any proceeds collected as a result of the ongoing litigation involving the note.

Subsequently, on March 29, 1982, the Ward case converted to Chapter 7 and, in due course, a Trustee in Bankruptcy was appointed to administer the bankruptcy estate.

Pully has, however, continued to involve himself in affairs concerning the note. He has pressed the trustee to pursue Ward's claim against Metro and objected to a settlement of the litigation as proposed by Metro[2]. In addition, he has filed a motion to require the trustee to initiate adversary proceedings against Metro. On April 12, 1983, this Court ruled that it is the trustee, and not the debtor, who has the right to determine whether to settle or litigate the debtor's claim. *See, Meyer v. Fleming,* 327 U.S. 161, 165, 66 S.Ct. 382, 385, 90 L.Ed. 595 (1946). In addition, Pully has, at the trustee's request, furnished the trustee with information to assist him in determining whether to settle or litigate the claim.

Pully has not produced a copy of any written agreement between himself and Ward. Ward, however, has not denied the existence of a contingent agreement or objected to the terms stated by Pully. The settlement offer by Metro calls for payment of between $165,000.00 and $200,000.00. It is Pully's position that this range for a settlement establishes his fee in the matter at $50,817.00 based upon the terms of the alleged contingent fee agreement.

The trustee contends that Pully has not met the requirements of Virginia Code § 54–70 for perfecting a lien; that because the note is an asset of the bankruptcy estate, any work done by Pully since the original petition was filed can only have been for the estate; that the trustee never consented to representation by Pully and

---

1. Section 54–70 reads, in pertinent part:

Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract, may contract with any attorney-at-law to prosecute the same, and such attorney shall have a lien upon such cause of action as security for his fees for any services rendered in relation to the cause of action or claim. And when any such contract shall be made, and written notice of the claim of such lien shall be given to the opposite party, his attorney or agent, any settlement or adjust-ment of such cause of action shall be void against the lien so created, except as proof of liability on such cause of action.

1950 Code of Virginia § 54–70 (1982 Repl. vol.)

2. The designation of the parties herein as "Complainant" and "Respondents", respectively, refers to the original filing by Metro of a Bill of Complaint in the Circuit Court for the City of Norfolk, which action was removed to the Bankruptcy Court on April 1, 1982.

that no order authorizing Pully to represent the estate ever has been entered; and further that Pully cannot be employed by the estate because, having taken a position adverse to the estate by filing an objection to the proposed settlement between Metro and the trustee, Pully is not a disinterested professional as required by § 327 of the Bankruptcy Code.

The trustee also states, however, that Pully's efforts have resulted in some benefit to the trustee in the administration of the estate and that the trustee consistently has sought Pully's "input" regarding Ward's claim on the note. Accordingly, the trustee does not oppose all compensation to Pully; rather, the trustee favors compensation for Pully on a *quantum meruit* basis for his work on the litigation involving the Metro note. In addition, the trustee supports the authorizing of Pully's employment by the estate *nunc pro tunc* with Pully further making appropriate application at the conclusion of the case for allowance of attorney fees.

■ Under section 541 of the Bankruptcy Code, the filing of a petition creates an estate "comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case"[3]. A note is property and, accordingly, the Metro note became part of the bankruptcy estate on November 16, 1981, eleven days after Pully's employment to effect collection. Although Ward, as a Chapter 13 debtor, retained possession of the estate's property under Section 1306(b), he did so as a "debtor-in-possession" only. *See,* Legislative History of Bankruptcy Code § 323, 11 U.S.C. 323, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 326 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 37 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The filing of the petition severed the attorney-client relationship which, as a contingency fee arrangement to be paid from the proceeds of the note, was founded upon a cause of action involving property of the bankruptcy estate. All further work by Pully to collect the note, therefore, can only have been performed for the bankruptcy estate.

Pully, in support of his claim of lien for the full contingent fee, cites *Katopodis v. Liberian S/T Olympic Sun,* 282 F.Supp. 369 (E.D.Va.1968). In *Katopodis,* the parties settled directly, "behind the back" of the plaintiff's attorney. The court in *Katopodis* noted a split of judicial authority between the full contingent fee and *quantum meruit* as the proper measure of the attorney's recovery in such circumstances. While expressly declining to address that controversy because on the particular facts of the case either method would have produced the same monetary result, the *Katopodis* court awarded the contingent fee based upon the defendant's bad faith in attempting to evade payment of the attorney's fee.

More recently, the Virginia Supreme Court in two decisions upheld the validity of Section 54–70 liens but ordered compensation on a *quantum meruit* basis only, because the attorneys had been discharged before completing the cases. In one case, *Heinzman v. Fine, Fine, Legum and Fine,* 217 Va. 958, 234 S.E.2d 282 (1977), the client expressly discharged the attorney. In *Fary v. Aquino,* 218 Va. 889, 241 S.E.2d 799 (1978), however, the parties settled directly, an action which, as the court said, "in effect, discharged the attorney." *Fary, supra* at 891, 241 S.E.2d 799.

■ In the instant case, the intervention of the bankruptcy also in effect discharged the attorney, without, however, any element of bad faith, since the action occurred by operation of law under the Bankruptcy Code. 11 U.S.C. § 541. Accordingly, any lien of Pully against the proceeds of the Metro note can only be for work performed before the bankruptcy petition was filed. Under the more recent Virginia cases, which upheld the liens for fees only to the point at which the attorneys were discharged, the amount of any such lien held by Pully would be limited to *quantum meruit* compensation, that is, reasonable com-

---

**3.** Under Section 301 of the Bankruptcy Code, a case "is commenced by the filing with the bankruptcy court of a petition." 11 U.S.C. § 301.

pensation for actual work performed. *Heinzman, supra; Fary, supra.* Such a result also would comport with the plain language of the statute which describes the lien as "security for ... fees *for any services rendered* in relation to the cause of action or claim." 1950 Code of Virginia § 54–70 (1982 Repl. vol.) (emphasis added).

■ Regarding compensation after the filing of the petition, section 327 of the Bankruptcy Code requires the Court to approve any employment of an attorney by a trustee or debtor-in-possession. 11 U.S.C. § 327. Under section 328, the court also must approve the compensation arrangement for such attorney, which may be a contingent fee. 11 U.S.C. § 328. Regardless of the authorized basis for compensation, the court may allow only "reasonable compensation for actual, necessary services rendered ... based on the time, the nature, the extent, and the value of such services" plus any actual necessary expenses. 11 U.S.C. § 330(a).

The trustee now having submitted the claim on the Metro note to a third party attorney for evaluation, the Court can find no bar to Pully's employment by the estate based upon the allegation that Pully has taken a position adverse to the estate.

The trustee is correct in his contention that Pully failed to perfect his lien by notifying the opposing party or its counsel as required by section 54–70. The Court notes, however, that a fair reading of the statute would not require such written notice to create the lien but only for the purpose of enforcing the lien against a direct settlement by the parties. *See,* footnote 1, *supra.*

Bankruptcy law recognizes common law liens such as the one provided for in Section 54–70. *See, Bolling v. Bowen,* 118 F.2d 59 (4th Cir.1941). Accordingly, the Court finds that Pully has a valid lien for compensation for work performed prior to the filing of the bankruptcy petition. When, as here, however, the attorney has been discharged, the amount of such lien under Virginia law would be limited to *quantum meruit* compensation for work actually performed.

Thus, should the trustee recover on the note, Pully would have a lien on the proceeds under section 54–70. Said lien would be restricted in amount to work performed during the eleven days between his engagement by Ward and the filing of the bankruptcy petition. If Pully can document any work during that period, the Court will consider permitting Pully to file a late proof of claim in an amount reasonably commensurate with said work. For all work performed since the filing of the petition, the Court will consider entering an order authorizing the trustee to employ Pully, *nunc pro tunc* at a reasonable hourly rate, with Pully to make appropriate application at the close of the case for allowance of compensation based upon an itemized statement of time expended.

An appropriate Order will enter.