In re MILITARY CIRCLE PET CENTER # 94, INC. t/a Docktor Pet Center, Debtor.

MILITARY CIRCLE PET CENTER # 94, INC., Plaintiff,

v.

DOCKTOR PET HOLDINGS, LTD., Alexander P. Smith & Associates, P.C., Craig and Macauley Professional Corporation, James L. Pedigo, Jr., Sykes, Carnes, Bourdon, & Ahern, P.C., Dilks Enterprises, Inc., Defendants.

Bankruptcy No. 92–22217–T.
Adv. No. 94–2002–T.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Dec. 28, 1994.

Melvin J. Radin, Norfolk, VA, for Alexander P. Smith & Associates, P.C., James L. Pedigo, Jr., Sykes, Carnes, Bourdon & Ahern, P.C. and Dilks Enterprises, Inc.

Michael P. Cotter, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Craig and Macauley.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This adversary proceeding involves a dispute between two law firms who represented

the same creditor in this bankruptcy case over their rights to payment from a promissory note. The makers of the note are the debtor and its principals, the Linehans.

Because of the lawyers' dispute over the note payments, the debtor commenced this adversary proceeding to determine the amount, validity, and priority of liens against the note. Pending a ruling by the court, the debtor has placed in escrow the sum of $25,206.80 which represents payments debtor would have made under the note but for the present dispute.

For reasons stated in this memorandum opinion, this court will award the $25,206.80 in escrow to Alexander P. Smith and Associates and the remaining payments to be made under the note to Craig and Macauley Professional Corporation.

*Findings of Fact*

The debtor, Military Circle Pet Center # 94, Inc., and the Linehans, the individuals who operated Military Circle Pet Center and other pet stores, entered into several franchise agreements with Docktor Pet Center, Inc. (DPC), a supplier of pet products and a franchisor of a nationwide chain of pet stores. In December 1991 DPC sold all of its assets to Docktor Pet Holdings, Inc., a similar franchisor of pet stores. Craig and Macauley Professional Corporation (C & M) has been the general counsel for Docktor Pet Holdings since its incorporation.

On April 10, 1992, Military Circle Pet Center, the debtor, filed a Chapter 11 bankruptcy petition. Docktor Pet Holdings hired the firm of Alexander Smith and Associates (Smith) to represent it in the Military Circle Pet Center's bankruptcy case. Docktor Pet Holdings asserted administrative and other claims against debtor based on the franchise agreements. At the beginning of these proceedings, Mr. Pedigo was an associate with Smith's firm; however, Pedigo left Smith's firm, became an associate with Sykes, Carnes, Bourdon, & Ahern, P.C. (Sykes), and continued representing Docktor Pet Holdings.

Smith represented Docktor Pet Holdings at the first meeting of creditors and at all subsequent hearings in the United States Bankruptcy Court for the Eastern District of Virginia through April 1993. C & M was aware of Smith's representation and corresponded with Smith regarding negotiating a settlement.

Smith hired Dilks, a systems analyst, to compile the records of Docktor Pet Holdings. With Dilks' assistance, Smith determined the amount of indebtedness Military Circle Pet Center owed to Docktor Pet Holdings.

In June 1992 Docktor Pet Holdings commenced an arbitration proceeding against the Linehans in Massachusetts. The Linehans commenced an action in Virginia state court naming Docktor Pet Holdings as a defendant. Docktor Pet Holdings then removed the action to the United States District Court for the Eastern District of Virginia.

Docktor Pet Holdings, the debtor, and the Linehans negotiated a global settlement in the fall of 1992. In this settlement, the Linehans and debtor made certain cash payments to Docktor Pet Holdings and executed a note in favor of Docktor Pet Holdings. The note provided that Massachusetts law would govern.[1] Also, pursuant to the global settlement, the arbitration proceeding in Massachusetts and the United States District Court case in Virginia were dismissed.

C & M and Smith participated in the negotiations and the preparation of settlement documentation. Smith represented Docktor Pet Holdings at settlement closing on January 21, 1993. Smith held all the settlement documents, including the note, until this court approved the settlement. After the court approved the settlement, Smith sent the settlement documents to Docktor Pet Holdings. At this time, Smith failed to give notice of any asserted attorney's lien to the

---

1. The note states: "All rights and obligations hereunder shall be governed by the laws of the Commonwealth of Massachusetts." Also, the settlement agreement states: "This Settlement Agreement is executed under seal and shall be governed by the laws of the Commonwealth of Massachusetts. The terms of this Settlement Agreement are enforceable in any court of competent jurisdiction."

Linehans, the debtor, their counsel, or to any other person or entity.

On January 27, 1993, Docktor Pet Holdings executed a pledge agreement in favor of C & M and endorsed the note to C & M to secure outstanding fees it owed to C & M and for C & M's future services to Docktor Pet Holdings. As of January 27, 1993, C & M had not received written notice of any claim to the note. Furthermore, C & M has retained physical possession of the note since January 27, 1993.

Because Smith still needed to perform some services for Docktor Pet Holdings, Smith, including Dilks and Pedigo, did not submit their bills for services rendered until April 5, 1993. The amount owed to Smith is $25,206.80: $11,800.00 for Dilks' services, $825.00 for Pedigo's services, and $14,548.25 plus costs of $903.34 for Smith's services. Before submitting his bill, Smith was informed on March 5, 1993, that Docktor Pet Holdings had assigned its property to Khan, McKenzie & Aylward. C & M prepared the assignment of assets from Docktor Pet Holdings to Kahn, McKenzie & Aylward.

By letter dated April 2, 1993, C & M gave notice to debtor and the Linehans that the note had been assigned by Docktor Pet Holdings to C & M. Thereafter, from April 1, 1993, to December 1, 1993, debtor, as maker of the note, made nine monthly payments of $3,000 each to C & M.

On December 23, 1993, Smith asserted that he had an attorney lien against the next payment due under the note. Smith had not asserted the existence of the lien any time before December 23, 1993. On August 11, 1994, Docktor Pet Holdings owed C & M $29,360.67. Of this amount, the amount relating to litigation with the debtor and the Linehans was $15,773.90.

The debtor commenced this adversary proceeding on January 3, 1994, naming C & M, Docktor Pet Holdings, Smith, Dilks, and Sykes as defendants. Upon the agreement of the parties, the makers of the note placed the amount of $25,206.80 in a separate account pending the outcome of this trial. Subsequent to the filing of this adversary proceeding, C & M received six payments of $5,000.00 each under the note.

*Discussion and Conclusions of Law*

C & M and Smith are law firms who both represented Docktor Pet Holdings, Inc., a creditor in the bankruptcy case. Through the law firms' joint efforts Docktor Pet Holdings's disputed claim was settled with its receipt of cash and a promissory note from debtor and debtor's principals. Subsequently, Docktor Pet Holdings endorsed the promissory note over to C & M as security for payments of C & M's legal fees.

In this adversary proceeding, the debtor has requested the court to determine which of the two law firms is entitled to payment of the sum of $25,206.80, representing a series of payments debtor is obligated to make under the note. C & M claims priority of payment based upon its assertion that it is a holder in due course of the note. Smith claims priority by virtue of an alleged attorney lien against the note under Virginia law.

**Applicability of Massachusetts and Virginia Law**

■ The note and settlement agreement state that the laws of Massachusetts apply. The transfer of the note from Docktor Pet Holdings to C & M is also governed by Massachusetts law. Since the transfer occurred in Massachusetts and absent any agreement between the parties, Massachusetts has the most contacts with the transfer of the note. *See* Mass.Gen.Laws Ann. ch. 106, § 105 (West 1994).

■ However, since the settlement and work done by Smith was conducted in Virginia, the Virginia lien statute should apply to Smith's claim of his attorney lien against the note. *See* Va.Code Ann. § 8.1–105 (Michie 1994).

**Holder in Due Course under Massachusetts Law**

■ According to Massachusetts law, a holder in due course must meet the requirements established under Mass.Gen.L. ch. 106, § 3–302(1) (West 1994). The relevant part reads:

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Mass.Gen.L. ch. 106, § 3–302(1) (West 1994).

Because there is no dispute as to whether C & M took the note for value, this court is concerned only with the good faith and notice requirements found in subsections (1)(b) and (1)(c).[2] *Good Faith: § 3–302(1)(a); § 1–203; and § 1–201(19)*

■ Good faith is defined as "honesty in fact in the conduct or transaction concerned."[3] Mass.Gen.L. ch. 106, § 1–203(19); *see also Gerseta Corp. v. Wessex–Campbell Silk Co.,* 3 F.2d 236, 238 (2d Cir.1924) (holding that good faith is the absence of bad faith and bad faith is dishonesty and absence of fidelity to the obligations of morals and honor). "Good faith" is a subjective test, and the subjective good faith of the purchaser is sufficient to satisfy the good faith prerequisite for due-course status. *See Fillebrown v. Hayward,* 190 Mass. 472, 77 N.E. 45, 46 (1906); *Moore v. Potomac Sav. Bank,* 160 Va. 597, 169 S.E. 922, 925 (1933). Here, C & M advocates that the note was taken in good faith and has passed Massachusetts' subjective test.

■ Although good faith appears to be a subjective test under section 3–302, the Massachusetts code imposes an objective standard for all transactions pursued under the commercial code. "Every contract or duty within this chapter imposes an obligation of good faith in its performance or enforcement." Mass.Gen.L. ch. 106, § 1–203 (West 1994). In fact, the 1990 Main Volume Massa-chusetts Code comment recognizes that "conceivably the good-faith provisions of § 1–203 and § 1–201(19) may operate to impose an objective test." *See also Gerseta Corp.,* 3 F.2d 236, 238.

■ One who seeks protection as a holder in due course must have dealt fairly and honestly in acquiring the instrument as to the rights of prior parties; furthermore, the person is not a holder in due course if he fails to inquire because of a suspicion that inquiry would disclose a vice or defect in the title. *See Norman v. World Wide Distribs., Inc.,* 202 Pa.Super. 53, 195 A.2d 115, 118 (1963); *Mills v. World Wide Distribs., Inc.,* 202 Pa.Super. 59, 195 A.2d 118, 119 (1963); *Fehr v. Campbell,* 288 Pa. 549, 137 A. 113, 116–17 (1927).[4]

C & M, the general counsel for Docktor Pet Center, took the note on January 27, 1993, only three days after it was received by Docktor Pet Holdings. Twenty-two days later, C & M negotiated for Docktor Pet Holdings the sale of Docktor Pet Holdings' assets to another company. These circumstances suggest that C & M did not act in good faith under an objective standard.

Also, this court is concerned about the close relationship between C & M and Docktor Pet Holdings. It has been held that the transferee did not take in good faith and was not a holder in due course when a close relationship exists between transferee and transferor. *American Plan Corp. v. Woods,* 16 Ohio App.2d 1, 3–5, 240 N.E.2d 886, 888 (1968); *Unico v. Owen,* 50 N.J. 101, 232 A.2d 405, 410 (1967). Since Docktor Pet Holdings' incorporation, C & M has been its corporate counsel. There is a close connection between corporate counsel and their corporations. Because of C & M's close relationship with

---

2. In addition, C & M's taking the note for future services limits the extent to which it can be a holder in due course. *See Korzenik v. Supreme Radio, Inc.,* 347 Mass. 309, 197 N.E.2d 702, 704 (1964) (taking promissory notes for future and past services, an attorney is not a purchaser for value and cannot be a holder in due course), and *Fernandez v. Cunningham,* 268 So.2d 166, 168 (Fla.Dist.Ct.App.1972) (acquiring note for payment for services performed, attorneys were holders in due course only to the extent of the amount of services performed).

3. Although good faith is not defined in section 3–302, the general definitions section applies for the definition of terms not defined in individual sections. *See* Mass.Gen.Laws Ann. ch. 106, § 1–201 (West 1994).

4. While these case are from Pennsylvania, this court notes that they are cited in the Mass.Code Ann. Casenotes. *See* Mass.Gen.Laws Ann. ch. 106 § 3–302 note 20.

Docktor Pet Holdings and the surrounding facts and circumstances, this court does not believe that C & M acted in good faith when the firm took the note to the exclusion of Smith and other creditors.

### Notice Requirements under Massachusetts Law

 Pursuant to U.C.C. § 3–302(1)(c) and U.C.C. § 3–304(1)(b), a purchaser of a note must inquire if the purchaser has actual knowledge of facts that should alert him to possible irregularities concerning the note. Protection afforded a holder in due course cannot be used to shield one who simply refuses to investigate when facts known to him suggest an irregularity concerning commercial paper he acquires. *See Stewart v. Thornton,* 116 Ariz. 107, 568 P.2d 414, 416–17 (1977); *Norman,* 195 A.2d 115, 118.[5]

 Pursuant to section 1–201(25), a person has notice if:

(a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question has reason to know that it exists.

Mass.Gen.L. ch. 106, § 1–201 (West 1994). Since section 3–302(1)(c) uses the word "notice" and not "knowledge," the notice requirement in subsection (c) is one of reason to know from the surrounding facts and circumstances. Accordingly this court holds that a person who has reason to know from the surrounding facts and circumstances has notice.

Even if C & M assumed when it took the note that the note was free from all claims, the facts known to C & M suggested an irregularity in the note. At trial, Mr. Moorman, a shareholder and witness for C & M, testified that C & M incorporated Docktor

Pet Holdings and has always been Docktor Pet Holdings' corporate counsel. Mr. Moorman also stated that C & M knew that Docktor Pet Holdings was working with Smith, and this was corroborated by Ms. Crawford–Kelly, an attorney and witness for C & M. In addition, Mr. Moorman stated that C & M knew that Docktor Pet Holdings needed investment capital and that Docktor Pet Holdings had a substantial payable to C & M. Mr. Moorman then testified that C & M helped Docktor Pet Holdings transfer assets away to creditors.

Based on the above facts and circumstances, this court finds that C & M had notice, and therefore, C & M is not a holder in due course.

### Virginia Attorney Lien Statute

 Smith claims to hold an attorney lien against the promissory note. A lien perfected prepetition under the Virginia attorney lien statute, *see* Va.Code Ann. § 54.1–3932 (Michie 1994), is valid in bankruptcy. *See Metro Mach. Corp. v. Berkley Shipbuilding and Dry Dock (In re Ward),* 32 B.R. 318, 322 (Bankr.E.D.Va.1983). This court will recognize attorney liens incurred postpetition if the statute was followed by the attorney.

The Virginia statute is three sentences long, but only the first two sentences affect this case.[6] The statute's first sentence gives an attorney the right to a lien only under certain conditions, while the second sentence grants the attorney a right to protect the lien by written notice. Both of these conditions must be met in order for the attorney to have a valid attorney lien which will take priority over subsequent transactions under this statute.

Under the first sentence, an attorney has a right to a lien if the cause of action is in tort

---

**5.** Although these cases are not from Massachusetts, they were recognized in the case notes of the annotated statutes. *See* Mass.Gen.Laws Ann. ch. 106, § 3–302 note 20.

**6.** The statute reads:
Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract, may contract with any attorney to prosecute the same, and the attorney shall have alien upon the cause of action as security for his fees for any services

rendered in relation to the cause of action or claim. When any such contract is made, and written notice of the claim of such lien is given to the opposite party, his attorney or agent, any settlement or adjustment of the cause of action shall be void against the lien so created, except as proof of liability on such cause of action. Nothing is this section shall affect the existing law in respects to champertous contracts.
Va.Code Ann. § 54.1–3932 (Michie 1994).

or for liquidated or unliquidated damages on a contract. *See* Va.Code Ann. § 54.1–3932 (Michie 1994). In the case before us, the court concludes that the settlement on the franchise agreements was for liquidated damages on a contract; thus, the criterion described in the first sentence exists.

The second sentence of the statute affords an attorney lien protection if written notice is given to the opposite party. The makers of the note, debtor Military Circle Pet Center and the Linehans were the opposite parties. Because Smith and C & M were not adverse parties at the time the settlement agreement was reached, notice to C & M was not necessary. Thus, Smith was required to give notice to the opposite party, the debtor, in order to perfect his lien. This he failed to do, and therefore he did not perfect an attorney lien against the note. *See* Va.Code Ann. § 54.1–3932 (Michie 1994); *Katopodis v. Liberian S/T Olympic Sun,* 282 F.Supp. 369, 371 (E.D.Va.1968).

Although Smith can not utilize the protection given to perfected liens under the statute, he does have a lien for the services he provided to Docktor Pet Holdings.[7] However, this lien has no priority over any other claim against the note.

*Conclusion*

[redacted] Because neither firm has been paid in full for their services to Docktor Pet Holdings, this court must determine which lawyer's claim against Docktor Pet Holdings takes priority. C & M is not a holder in due course, and it does not take the note free from any claim. However, Smith did not perfect his claim against the note as required under the Virginia attorney lien statute. Accordingly, neither party has priority over the other's claim.

The court cannot find in this case that one lawyer's work should take precedence over the other's since each firm has done a substantial amount of work for Docktor Pet Holdings. C & M has already recovered at least $57,000.00 under the note, which is more than the $29,360.67 of services the firm provided to Docktor Pet Holdings prior to the commencement of this action. Pursuant to the court's equitable powers under 11 U.S.C. § 105(a), the court will allow Smith to recover under the note his fees incurred during the bankruptcy which totaled $25,206.80 ($825.00 for Pedigo's services, $14,548.25 plus costs of $903.34 for Smith's services, and $11,800.00 for Dilks' services).[8] Based on the record before the court, C & M is entitled to any remaining payment under the note.

A separate order will be entered.

[redacted]

7. As previously discussed, Smith's lien was created pursuant to the first sentence of the Virginia attorney lien statute. *See* Va.Code Ann. § 54.1–3932 (Michie 1994); *Metro Mach. Corp.*, 32 B.R. 318, 322.

8. The United States Supreme Court has held that the attorney's fee "must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must take account of other expenses and profit." *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989). Dilks' services benefitted and contributed to Smith's work product and can be included under the Virginia attorney lien statute.